**LOUGHRIDGE'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. LOUGHRIDGE'S ESTATE.**

Nos. 3993, 3994.

United States Court of Appeals
Tenth Circuit.

May 11, 1950.

Rehearing Denied June 7, 1950.

Writ of Certiorari Denied Oct. 9, 1950.
See 71 S.Ct. 67.

Thomas F. Boyle, New York City (Boyle, Feller, Stone & McGivern, Charles S. Whitman, Jr., and James J. McKay, all of New York City, on the brief), for Estate of Paul Loughridge.

Hilbert P. Zarky, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, Helen Goodner, and Maryhelen Wigle, all of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The separate petitions of Marjorie Mead Loughridge, executrix of the estate of Paul Loughridge, deceased, and of the Commissioner of Internal Revenue, bring here for review a decision of the Tax Court determining questions relating to the liability of the estate of Paul Loughridge for estate taxes.

Section 811(d) of the Internal Revenue Code, 26 U.S.C.A. § 811(d), relates to the taxation of revocable trusts. Subsection 2 thereof provides in presently pertinent part that the value of the gross estate of a decedent for estate tax purposes shall include the value of all property to the extent of any interest therein of which the decedent made a transfer in trust on or prior to June 22, 1936, where the enjoyment thereof was at the date of his death subject to any change through the exercise of the power, either by the decedent alone or in conjunction with any other person, to alter, amend, or revoke the trust; and subsection 3 provides among other things that the power to alter, amend, or revoke the trust shall be considered to exist on the date of the death of the decedent even though the exercise of such power is subject to a precedent giving of notice, or even though the alteration, amendment or revocation, takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. Section 812 of the Internal Revenue Code, 26 U.S.C.A. § 812, relates to the manner in which the net value of an estate shall be determined for the purpose of estate tax. Subsection (c) thereof provides in pertinent part that there shall be deducted from the value of the gross estate an amount equal to the value of any property forming a part of the gross estate of any person who died within five years prior to the death of the decedent, where such property can be identified as having been received by the decedent from the donor by gift, or from the prior decedent by gift, bequest, devise, or inheritance, but that the deduction shall be allowed only where a gift tax or an estate tax imposed by law was finally determined and paid by or on behalf of the donor, or the estate of the prior decedent, as the case may be, and only in the amount finally determined as the value of such property in determining the value of the gift, or the

gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate, and only if in determining the value of the net estate of the prior decedent no deduction was allowable under the subsection.

Mel H. Loughridge was the mother of William H. Loughridge, and of Paul Loughridge, hereinafter referred to as the decedent. On July 15, 1929, she executed a deed of gift which provided that she thereby gave, granted, conveyed, and confirmed unto her sons all of the property listed in a schedule attached to the deed. And the instrument contained a provision in which the donor requested her sons, with such part of the proceeds of the gifts as they should then or thereafter determine, to make provision by way of trust or otherwise for the support, maintenance, and education of their children, then living or thereafter born. The decedent then had three children. William H. Loughridge had none.

On July 16, 1929, the decedent as donor, and the decedent and his wife as trustees, executed a declaration of trust for the benefit of their three children, Paul Jr., Charles, and Ruth; and on the same day securities of substantial value were transferred to the trust estate. The trust instrument contained a provision vesting in Paul Loughridge and Marjorie Mead Loughridge, the original trustees, or the survivor of them, the power at any time or from time to time to alter, amend, or extend all or any of the terms and conditions of the trust. On November 15, 1935, the trust was amended to include as beneficiaries Alice, a child of decedent and his wife born after the execution of the original trust, and any child or children thereafter born to them. At the time of the amendment additional securities were transferred to the trust estate which were approximately equal in value to the interest of each of the original beneficiaries. And on December 27, 1935, the decedent, his wife, and United States Trust Company of New York executed a modifying trust instrument. By such modifying instrument, the decedent and his wife resigned as trustees and the trust company was named as successor trustee. Under the amended trust instrument, trusts were created for each of the four children. The income was to be accumulated until the child reached the age of twenty-one; at that time the accumulated income was to be paid to the child; and thereafter the annual income was to be paid annually to the child for the duration of the trust. The trusts were to terminate when the younger of the two children, Charles and Ruth, reached the age of forty, or upon the death of the survivor of them before reaching that age; and upon such termination each child's share was to be transferred to him or her absolutely in fee simple, if living, but if dead to others as therein specified. The trust instrument further provided that upon written notice from the decedent, the trustee should resign; that such resignation should become effective on the day specified in the notice which should be not less than thirty days after the delivery of the notice; that in case of the resignation of the trustee, the decedent, or if he be not then living, Marjorie Mead Loughridge, should have the power to appoint a successor trustee; and that such successor trustee should have all the rights and power, discretionary or otherwise, which were therein given to the trustee. And the amended trust further provided that the trustee was authorized and empowered at any time, or from time to time, in its absolute discretion, to terminate the trust in whole or in part; and that thereupon the trustee should assign, transfer, pay over, and deliver in fee simple and free of all trusts the whole or such share of the trust fund or such part or parts thereof as the case might be unto the beneficiary thereof. The United States Trust Company acted as trustee until after the death of the decedent. It resigned in 1944, and Marjorie Mead Loughridge appointed a successor trustee.

Fred H. Harmon, of Cook County, Illinois, was the uncle of decedent. In May, 1929, he created an irrevocable trust which provided among other things that upon his death, one-half of the corpus of the trust estate should go to the decedent, if living, and if not, then to his estate, and one-half to John H. McIllvaine, another nephew of

Harmon, if living, otherwise to his then living issue. Harmon died in 1941. A federal estate tax return was filed for his estate in which it was stated that the assets of the trust had a valuation of $430,716 as of the optional valuation date which had been elected. It was further stated that all deposits in the trust, with the exception of $26,733.27 cash additions, were made prior to March 3, 1931; and that such deposits were not taxable. The only portion of the trust estate which was reported in the return for estate tax purposes was the $26,733.27. The estate reported for estate tax purposes a total gross estate value of $71,066.14 and deductions of $26,623.76; and computed and paid an estate tax in the amount of $97.74. The Commissioner of Internal Revenue issued a notice of deficiency in estate tax of $73,563.54 by sole reason of including in the gross estate the value of the entire property transferred by Harmon to the trust under the trust instrument. The estate of Harmon filed its petition in the Tax Court, assigning as error the action of the Commissioner in including in the gross estate the entire value of the property transferred to the trust. The assigned error was challenged, and that was the sole issue in the proceeding. While the proceeding was pending the estate of Harmon paid the determined deficiency of $73,563.54, one-half thereof being charged against and paid by the estate of Paul Loughridge. Prior to the trial of the proceeding, the parties signed and filed a stipulation which recited that the tax liability in the proceeding was as shown in the statement therein contained. The stipulation set forth net tax liability, $13,733.44; tax assessed and paid prior to the issuance of the deficiency notice, $97.74; deficiency without taking into account the assessment and payment made subsequent to the issuance of the deficiency notice, $13,675.70; original tax assessed and paid, $97.74; additional tax assessed and paid, $73,563.54; total $73,661.28; net tax liability, $13,773.44; overpayment, $59,887.84. And the stipulation provided that the court might enter its decision that there was an overpayment in estate tax in the amount of $59,887.84, and might determine as a

part of its decision that such amount was paid after the filing of the petition in the proceeding. There was no other stipulation, no evidence was adduced, no trial was had, and no findings of substantive facts were made. The Tax Court entered its decision based upon the stipulation determining an overpayment in estate tax of $59,887.84, which was paid after the filing of the petition in the proceeding. A refund of that amount together with accrued interest was paid to the estate of Harmon. The Harmon estate credited one-half of the refund to the estate of decedent herein and the other one-half to McIllvaine. Subsequent to the death of decedent herein, his estate received from the Harmon trust estate funds or property in the value of $220,365.54 at the date of the death of decedent.

The decedent died in 1943. In the estate tax return seasonably filed the executrix did not include in the decedent's gross estate any portion of the value of the corpus of the trusts created for the children of decedent, and she claimed as a deduction the entire amount received from the Harmon estate as property previously taxed in that estate. The Commissioner of Internal Revenue treated the trusts for the children of decedent as includable in his gross estate for purposes of estate tax, disallowed the claimed deduction as property previously taxed in the Harmon estate, and imposed a deficiency. In her petition for redetermination, the executrix challenged that action of the Commissioner and sought its correction. By amended answer, the Commissioner pleaded among other things that in determining the deficiency he allowed as a deduction for property previously taxed the amount of $66,395.96 for the purpose of the basic tax and the amount of $69,043.96 for the purpose of additional tax; that such allowances were erroneous; that only $13,680.29 of the amounts allowed represented property previously taxed; and that the deficiency should be increased accordingly. The Tax Court held that the value of the entire corpus of the trusts created for the children of decedent was includable in the decedent's gross estate for estate tax purposes; and that the executrix failed to discharge the burden rest-

ing upon her to show that the decedent's share of the Harmon trust property, or some identifiable portion thereof, was actually included in the Harmon estate for purposes of estate tax and the tax thereon finally determined and paid by or on behalf of that estate. The court further held that while it was apparent that some portion of the value of the trust property which passed from the Harmon estate to the estate of decedent was included in the Harmon gross estate for the purpose of computing estate tax liability, the amount of such portion was not shown; that the Commissioner had failed to discharge the burden of proof resting upon him to sustain his affirmative plea; and that therefore such plea was denied. Estate of Paul Loughridge, 11 T.C. 968. Based upon its findings of fact and opinion in composite, the court entered its decision determining a resulting deficiency in estate tax. The two separate petitions for review followed.

■ Taking up the petition for review of the executrix of the estate of decedent, the first contention urged is that Mel H. Loughridge was in fact the transferor of the property constituting the trust estate for the benefit of the then three children of decedent; that she in fact established the trust; that the decedent was merely the conduit through whom the assets passed to the trust; and that therefore the value of such property was not includable in the gross estate for the decedent for purposes of estate tax. For more than a year prior to the execution of the deed of gift, Mel H. Loughridge, William H. Loughridge, the decedent, and the wife of the decedent, discussed from time to time the matter of creating a trust for the children of the decedent and his wife and the children of William H. Loughridge in the event any should be born to him. The deed of gift was executed one day. The original trust for the benefit of the children of decedent and his wife was executed the next day. All of decedent's interest in the securities described in the schedule attached to the deed of gift passed into the trust estate and constituted all or virtually all of such estate. And according to the book entries, the securities were transferred directly from the account of Mel H. Loughridge to that of the trust. But the instrument executed by Mel H. Loughridge expressly recited in plain language that the property was given, granted, conveyed, and confirmed unto her two sons. It did not refer to the children of decedent as vendees or beneficiaries under its terms. It contained a provision requesting her sons, with such part of the proceeds of the gift as they should determine, to make provision by way of trust or otherwise for the support, maintenance and education of their children, then living or thereafter born. But that was not a condition of the gift to her sons. According to the books and accounts, the securities or virtually all of them constituting the corpus of the original trust estate were transferred directly from the account of Mel H. Loughridge to that of the trust. But all of the books and accounts involved in the transaction were under the direct supervision of a single accountant, and there was no showing that the entries were made in that manner pursuant to any direction from Mel. H. Loughridge or decedent. The Tax Court was warranted in finding and concluding that Mel H. Loughridge made a present gift to the decedent rather than establishing a trust for the benefit of her grandchildren, and that whether any of the property went into the corpus of a trust estate for the benefit of the children was left entirely to the will and action of decedent.

■ The next contention is that the decedent at the time of his death did not have the power to alter, amend, or revoke the trust for the benefit of the children, within the meaning of section 811(d) (2), supra, and that therefore the value of the corpus of the trust property was not includable in his estate for the purpose of estate tax. The statute brings within its provisions and requires inclusion in the estate of a deceased person for purposes of estate tax property transferred to a trust prior to June 22, 1936, if the enjoyment thereof was at the date of the death of the decedent subject to any change through the exercise of the power to alter, amend, or revoke the trust, either by the decedent alone or in conjunction with any other person. The trust

instrument in force and effect at the death of the decedent lodged in him the power to require the trustee to resign. It vested in him the power to name a successor trustee. And it reposed in the successor trustee the power in his or its discretion to terminate the trust in whole or in part; and thereupon the trustee was required to pay to the beneficiary then entitled thereto the trust fund due him or her, freed of the trust. Assuming that upon the resignation of the then trustee pursuant to notice given in accordance with the terms of the trust, the decedent had the power to name himself as successor trustee, it lay within his power to compel the resignation of the trustee, to name himself as successor trustee, and to determine in his discretion whether the trust should be continued in effect or terminated in whole or in part. If he determined that the trust should be continued in effect, the interest of the beneficiary in the corpus and the income was one of future enjoyment. If he determined that the trust should be continued in effect, it could not be said with assurance that the children named as the beneficiaries would ever come into present ownership and enjoyment of their respective shares of the corpus, or any part of it. They might die before doing so, and in that event it would subsequently pass to others. On the other hand, if he determined in his discretion to terminate the trust the interests of the beneficiaries would immediately become that of absolute ownership and right of enjoyment. It lay within the ambit of the power of decedent in his discretion to determine whether the beneficiaries should merely have the contingent right of future ownership and enjoyment, or immediate ownership and enjoyment, free of trust or like limitation. His power under the trust instrument affected not only the time of possession and enjoyment but also the person or persons who might come into ownership and enjoyment of the property. The reservation of power to shift or vary in that manner the interests of the beneficiaries was a substantial attribute of ownership and control. And a donor who keeps within the range of his power such sweeping hold over the possession and enjoyment of trust property has not divested himself of the degree of control required by the statute in order to avoid liability for estate tax. Commissioner v. Holmes, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228.

At the time of the death of the decedent, he did not have the power to compel the trustee to resign promptly upon his demand and thus clear the way for the immediate appointment of himself as successor trustee. The trust instrument provided that upon written notice from the decedent, the trustee should resign. But it further provided that the resignation should become effective on the day specified in the notice which should be not less than thirty days after delivery of the notice. The right of the decedent to require the trustee to resign, and the duty of the trustee to resign, were not subject to substantial conditions or contingencies. The decedent had the absolute right to demand the resignation of the trustee. And it was the absolute duty of the trustee to resign pursuant to his demand. But the resignation did not necessarily become effective until thirty days after delivery of the notice. It may be that in the general field of trusts, the distinction between the present possession of power on the part of the settlor of a trust to require the trustee to resign and then appoint himself as successor trustee, and the right to acquire the power to appoint himself as successor trustee only after expiration of thirty days from delivery to the trustee of notice to resign is a technical difference or distinction of such legal substance that it is decisive. But taxation is a practical matter and it does not concern itself with narrow and technical considerations of that kind. The right of the decedent to require the trustee to resign was unfettered by contingency. And the duty of the trustee to resign at the demand of the decedent bore no qualifications or conditions. The giving of the notice to resign was a mere procedural formality. Assuming that on the resignation of the trustee, the decedent was clothed with power to appoint himself as successor, we think his power to terminate the trust must be deemed to have existed at the time of his death, within the spirit and meaning of section 811(d) (2), supra.

■ The amended trust instrument provided that the trust should be deemed a New York trust and should in all respects be governed by the law of that state. And it is argued that under the law of New York the decedent did not have the power to name himself as successor trustee. Cases decided by the courts of New York are cited in support of the contention. But none of them dealt even remotely with taxation and they are not in point. The case of Estate of Wilson v. Commissioner, 13 T.C. 869, is also relied upon to sustain the contention. There a bank was named as trustee, and the trustee had power in its absolute discretion to accelerate payments of interest or principal in case of need for educational purposes, because of illness, or for any other good reason. The settlor reserved the right to substitute another trustee, but he was not the original trustee. Here, the decedent and his wife were the original trustees. Appointing himself as one of the first trustees indicates pursuasively that the decedent did not intend to surrender the right to appoint himself successor trustee at a later juncture in the trust period if the occasion to appoint a successor trustee should arise. In the absence of a controlling statute or well established rule of local law otherwise, we perceive no tenable basis for the view that a settlor of a trust may appoint himself as the original trustee but may not name himself as successor trustee.

■ The last contention urged by the executrix of the estate of the decedent is that the Tax Court erred in holding that she failed to prove that the value of the Harmon trust property received by the estate of the decedent had been included in the Harmon gross estate for estate tax purposes, and that an estate tax had been paid thereon. Section 812(c), supra, authorizes a deduction from the gross value of the estate of a decedent of an amount equal to the value of any property forming a part of the gross estate of a person who died within five years prior to the death of the decedent, where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. But the deduction is subject to certain clearly blueprinted conditions and qualifications. It is allowed only where a gift tax or an estate tax imposed by applicable law was finally determined and paid by or on behalf of such donor, or the estate of such prior decedent, as the case may be. It is allowed only in the amount finally determined as the value of such property in determining the value of the gift or the gross estate of such prior decedent. It is allowed only to the extent that the value of such property is included in the decedent's gross estate. And it is allowed only if in determining the value of the net estate of the prior decedent no deduction was allowable under the statute or under the corresponding provisions of any prior Act of Congress, in respect of the property or property given in exchange therefor. The purpose of the statute is to avoid payment of an estate tax on property more than once in a five-year period. But the deduction authorized is a matter of legislative grace. And the burden rested upon the executrix seeking the deduction to meet all of the requirements prescribed in the statute. The burden rested upon her to show clearly that she came within all of its terms and conditions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

■ In order for the executrix to prevail upon the claim the ground that property received by the estate of the decedent from the Harmon estate had been included in the Harmon gross estate for estate tax purposes and that an estate tax had been paid thereon, it was necessary that she show affirmatively among other things the value placed upon such property in finally determining the value of the Harmon gross estate and that an estate tax computed on the basis of that value was paid thereon by or on behalf of the Harmon estate. In support of the claim, the executrix relied exclusively upon the estate tax return made by the Harmon estate, the pleadings in the proceeding before the Tax Court, the stipulation filed in the proceeding, and the decision entered therein. The return stated that the assets of the trust

had a total value of $430,716 as of the optional valuation date which had been elected. And it further stated that all deposits in the trust, with the exception of $26,733.27 cash additions, were made prior to March 3, 1931, and that such prior deposits were not taxable. The only portion of the trust estate which was reported in the gross estate for tax purposes was the $26,733.27 transferred to the trust after March 3, 1931. The estate reported for estate tax purposes a total gross estate value of $71,066.14 and deductions of $26,623.76. And based upon the return, an estate tax was computed and paid in the sum of $97.74. But the matter did not end there. It went before the Tax Court. Of course, the return could not disclose the amount finally determined in the proceeding before the Tax Court as the value of such property in determining the value of the gross estate of Harmon, or that a tax was computed and finally paid on the basis of such valuation. Neither did the pleadings, the stipulation, or the decision of the Tax Court disclose that fact. In short, the executrix failed to discharge the burden resting upon her to show all of the essential elements in support of the claim. And failing to discharge such burden, she cannot be heard to complain of the action of the Tax Court in rejecting the claim.

Coming to the Commissioner's petition for review, the Tax Court held that the Commissioner failed to sustain the burden of proof on his affirmative plea that in determining the deficiency in estate tax due by the estate of the decedent he erred in the amount allowed as a deduction for previously taxed property and that the deficiency should be increased accordingly. In support of the plea, the Commissioner introduced the testimony of a member of the technical staff of the Bureau of Internal Revenue. The witness testified that in advance of the date set for the trial of the proceeding in the Tax Court involving the liability of the Harmon estate for estate tax, representatives of the estate and representatives of the Commissioner met in conference for the purpose of considering a possible stipulation of facts or of settlement of all questions posed by the deficiency assessment; that he and the attorney repre-

senting the Commissioner agreed that the decedent's share in the trust property was not includable in the taxable gross estate of Harmon; that it should be eliminated from further consideration or discussion in that connection; that he and the attorney representing the Commissioner assumed a different position respecting the McIllvaine share of the trust property; that they insisted upon its inclusion in fixing the value of the Harmon gross estate; that the remainder of the discussion related solely to the McIllvaine interest in the trust property and did not concern itself with the share of the property belonging to the decedent; that at the conclusion of the conference one of the attorneys representing the Harmon estate stated that a proposal of compromise might be made prior to the trial of the issue relating to the McIllvaine interest in the property; that later an offer was made to pay one-half of the amount actually in dispute on the basis of including the value of the McIllvaine interest in determining the value of the Harmon gross estate; and that it was on the basis of that offer that the stipulation was signed and filed in the proceeding involving the liability of the Harmon estate for estate tax. The Tax Court admitted the testimony but later sustained an objection to it on the ground that it constituted an attempt to alter or vary by parol the terms of the stipulation and also amounted to an effort to attack collaterally the decision entered in the proceeding.

■ The well recognized rule excluding parol evidence which tends to vary or contradict the terms of a written instrument has application in an action where the enforcement of an obligation created by the writing is substantially the basis of the cause of action or affirmative defense. Popplewell v. Stevenson, 10 Cir., 176 F.2d 362. The stipulation and the tendered parol evidence both related to the liability of the Harmon estate for estate tax. In his affirmative plea in this proceeding before the Tax Court, the Commissioner did not seek to enforce any liability against the Harmon estate. He sought to increase a deficiency in estate tax against the estate of the decedent. He did not seek to enforce

an obligation against the estate of the decedent created by the stipulation or the decision in the proceeding involving the Harmon estate. Instead, he asserted a liability against the estate of the decedent created by statute. Neither the stipulation nor the decision entered in the proceeding involving the Harmon estate was substantially the basis of the liability asserted by the Commissioner in his affirmative plea.

■ The Commissioner did not seek to alter or vary the terms and conditions of the stipulation. And he did not undertake to attack collaterally the decision entered in the proceeding affecting the Harmon estate. Their regularity and validity were not challenged. By the parol evidence introduced and later stricken, he merely sought to show that in arriving at the terms and conditions of the stipulation, the decedent's share of the trust property was excluded in determining the total valuation of the Harmon taxable gross estate on which the figures set forth in the stipulation were based, and that therefore in entering the decision in that proceeding the value of the decedent's share of the trust property was likewise excluded in the total valuation of the Harmon gross estate. We are of the view that the testimony was not subject to the objection directed against it and that the striking of it constituted prejudicial error.

On the petition for review of the Executrix, the decision of the Tax Court is affirmed; and on the petition of the Commissioner, it is reversed and the cause is remanded for further proceedings not in conflict with the views herein expressed.

PHILLIPS, Chief Judge (dissenting).

These are petitions to review a decision of the Tax Court determining a deficiency in estate tax of $62,777.40 upon the estate of Paul Loughridge.

No. 3993.

Paul Loughridge [1] died testate February 26, 1943. On April 13, 1943, his widow, Marjorie Loughridge, was duly appointed and qualified as executrix of his estate. Decedent also left surviving him four minor children, Paul Loughridge, Jr., born May 31, 1925; Charles Loughridge, born June 19, 1926; Ruth Loughridge, born October 27, 1927, and Alice Loughridge, born June 29, 1932.

On July 16, 1929, a declaration of trust [2] was executed by the decedent as donor and by the decedent and Marjorie Loughridge as trustees, for the benefit of their children, Paul Jr., Charles and Ruth. It reserved power in the original trustees, or the survivor of them, at any time and from time to time, to "alter, amend or extend all or any of the terms and conditions of the trust."

On July 15, 1929, decedent caused to be transferred to the Children's Trust securities of the value of $128,561.50. On January 1, 1935, decedent transferred to the Children's Trust additional securities of the value of $2,940.62.

On November 15, 1935, after the birth of Alice, the trust declaration was amended to include Alice, and the decedent transferred to the trust securities of the value of $45,062.50, which was approximately equal to the interest of each of the three other beneficiaries, as of that time.

On December 27, 1935, decedent and Marjorie Loughridge, acting under their respective powers to alter and amend the Children's Trust, together with the United States Trust Company of New York, executed a modifying trust instrument. Under the modified trust instrument, the decedent and Marjorie Loughridge resigned as trustees and transferred to the United States Trust Company, as trustee, all of the trust property, and the trust property was divided into four equal shares and one share was set apart in trust for each of the four children. The amended declaration of trust provided that during the minority of each child the income from his share should be accumulated and paid over to him upon his attaining the age of 21 years, if living, and that thereafter, during the continuance of the trust, he should receive current income from his share, if living, but that if any

1. Hereinafter called decedent.

2. Hereinafter called the Children's Trust.

child should die before attaining 21, the accumulated income of his share should be paid to those persons who would take the principal of his share, and if any child died after attaining 21 and before termination of the trust, the income of his share should be paid to his surviving issue, *per stirpes,* and if there were none, then to decedent's living children in equal shares, or their surviving issue; and that the trust for each child should terminate when the younger of Charles and Ruth then living attained the age of 40 years, or upon the death of the survivor of Charles and Ruth before attaining the age of 40 years, and that upon such termination each child's share should be transferred to him absolutely in fee simple, if living, but if dead, then as directed by his will, but if he should fail to exercise his power of appointment, then to his surviving spouse or issue, and if there should be no surviving spouse or issue, then to Marjorie Loughridge, and if she be dead, to her estate.

The amended trust instrument further provided:

"Second: The Trustee is authorized and empowered, in case, at any time or from time to time prior to the termination of the trust above provided for as to any share of the Trust Fund, it shall, in its absolute discretion, determine that it is for the best interests of the beneficiary thereof that the trust as to such share of the Trust Fund be terminated as to the whole or any part or parts of such share, to terminate the trust of such share as to the whole or such part or parts thereof by an instrument or instruments, in writing, and thereupon it shall be the duty of the Trustee to assign, transfer, pay over and deliver, absolutely and in fee simple and free and discharged of all trusts, the whole of such share of the Trust Fund or such part or parts thereof as the case may be, unto the beneficiary of such trust.

\* \* \* \* \* \*

"Twelfth: The Trustee, upon written notice from Paul Loughridge, shall, or may if it so desires, upon written notice addressed to him (or if he be not living, to Marjorie Mead Loughridge), resign as Trustee hereunder; such resignation shall become effective on the day specified in the notice from Paul Loughridge, or that given by the Trustee, which shall be not less than thirty days subsequent to the delivery of such notice to the Trustee or the mailing of such notice by the Trustee. If such resignation is upon notice from Paul Loughridge, the Trustee shall be entitled to all commissions to which it would be entitled if the trust were then to terminate.

"In case of the resignation of the Trustee, said Paul Loughridge, or if he be not then living, Marjorie Mead Loughridge, may, by an instrument in writing duly executed and acknowledged, appoint a successor trustee, and upon such appointment such trustee shall have all the rights and powers, discretionary or otherwise, which are herein given to the Trustee.

"Thirteenth: From and after the date of execution of this instrument and its delivery to the Trustee, the said Paul Loughridge and Marjorie Mead Loughridge shall have no power further to alter, amend or extend all or any of the terms and conditions of the trust, nor shall the Trustee have any such power."

The United States Trust Company acted as trustee until 1944, at which time it resigned and Marjorie Loughridge appointed the Colorado National Bank of Denver, Colorado, as successor trustee.

In the estate tax return for decedent's estate no portion of the value of the corpus of the Children's Trust was included in decedent's gross estate.

The Commissioner determined that the entire value of the corpus of the Children's Trust, which value was stipulated to be $214,572.13 at the date of decedent's death, was includable in such gross estate for estate tax purposes. The Tax Court sustained such determination by the Commissioner.

Title 26 U.S.C.A. § 811 of the Revenue Code, in part, provides:

"§ 811. Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all

property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \* \*

"(d) *Revocable transfers.*

\* \* \* \* \* \*

"(2) *Transfers on or prior to June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph;

"(3) *Date of existence of power.* For the purposes of this subsection the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. In such cases proper adjustment shall be made representing the interests which would have been excluded from the power if the decedent had lived, and for such purpose if the notice has not been given or the power has not been exercised on or before the date of his death, such notice shall be considered to have been given, or the power exercised, on the date of his death."

The question is whether decedent on the date of his death, February 26, 1943, had power to revoke or terminate the trust.[3] That is the crucial date fixed by the statute, and the test laid down by Congress is whether, on that date, the decedent, through the exercise of a power to alter, amend, revoke or terminate the trust, could have changed the enjoyment of an interest therein.

Obviously, not being the trustee on the date of such death, the decedent had no such power. Counsel for the Commissioner argue that decedent could have removed the existing trustee and appointed himself as successor trustee, and therefore had such power to revoke or terminate at the time of his death. But the resignation of the existing trustee under the express terms of the trust could only become effective on the date specified in the written notice from the decedent, which could not be less than 30 days subsequent to the delivery of the notice to such trustee. It follows that unless § 811(d) (3) is applicable to the provision requiring a minimum of 30 days' notice before the resignation of an existing trustee should become effective, the power to revoke or terminate the trust did not exist in the decedent at the time of his death.

Section 811(d) (3) does not apply to notice prerequisite to the removal of a trustee. By its terms it is expressly limited to the giving of notice that an alteration, amendment or revocation will be made, or notice that an alteration, amendment or revocation will become effective at the expiration of a stated period. It has no application to a notice of the future effective date of a resignation of a trustee. The resignation of a trustee and the appointment of a new trustee is not an alteration, amendment, or revocation of a trust. Section 811 (d) (3) is applicable only to situations where the power exists at the date of the decedent's death, but prerequisite to its exercise, or to it becoming effective, notice must be given. In such cases, the notice is considered as having been given and the existing power exercised at the date of the death of the decedent.

In the instant case a minimum of 30

---

3. Neither the settlors, nor the trustee, had power to amend or alter the trust after the amendment of December 27, 1935.

days' notice had to be given before the then trustee could be removed and the new trustee appointed. During the notice period the power to revoke or terminate remained in the then trustee, and during such period, he, not the decedent, could revoke the trust. The giving of notice for the specified period was a condition which had to be fulfilled before the trustee could be removed and a new trustee appointed and invested with the power to revoke or terminate the trust. Hence, it is my opinion, that the trust property was not subject at the time of decedent's death to any change through the exercise of a power by the decedent to alter, amend or revoke the trust.

Moreover, the Children's Trust is, by its express terms, a New York trust and is governed by the laws of that state. The power of the decedent to appoint himself successor trustee, on the resignation of the existing trustee, must be determined by the law of New York. Since the decedent, if he appointed himself trustee, would receive commissions and other personal benefits, I sincerely doubt that under the laws of New York he could have legally appointed himself as successor trustee:[4]

No. 3994.

Fred H. Harmon, an uncle of the decedent, died on April 21, 1941. On May 28, 1929, Harmon created an irrevocable trust. Under the provisions thereof, on Harmon's death the trust terminated and one-half of the corpus went to the decedent and one-half to John H. McIllvaine, another nephew of Harmon. On July 6, 1942, a Federal estate tax return was filed for the estate of Harmon, which valued the assets of the trust at $430,716, as of the optional valuation date, which had been elected, and further stated that all of the property in the trust, with the exception of $26,733.27 of cash additions, came into the trust prior to March 3, 1931, and were not includable

in the gross estate. On the basis of its return the Harmon estate paid an estate tax of $97.74.

The Commissioner included all of the property of the Harmon trust in the Harmon gross estate and solely by reason thereof, on March 23, 1943, determined a deficiency of $73,563.54. On June 10, 1943, the estate filed its petition for review in the Tax Court, assigning as error the action of the Commissioner in including the whole of the Harmon trust in the gross estate. While the matter was pending before the Tax Court the parties entered into negotiations looking to a compromise. Representatives of the Commissioner conceded that the inclusion of the decedent's one-half of the Harmon trust property in the gross estate of Harmon could not be sustained, but contended that the McIllvaine one-half of the Harmon trust property was properly included in the gross estate of Harmon, and offered to accept $27,351.59. The Harmon estate made a counter offer of $13,773.44, which offer was accepted. Thereupon, the parties entered into a stipulation which read:

"It is hereby stipulated and agreed:

"(a) That the Federal estate tax liability in this proceeding is as shown in the following statement:

| | |
|---|---|
| Net tax liability............ | $13,773.44 |
| Tax assessed and paid prior to the issuance of the deficiency notice: * * * ............ | 97.74 |
| Deficiency without taking into account the assessment and payment made subsequent to the issuance of the deficiency notice on March 23, 1943... | 13,675.70 |
| Tax assessed and paid: Original, July 1942, P. 100, L. O. (Paid July 6, 1942)...... 97.74 | |

4. Real Property Law, N.Y., Consol.Laws, c. 50, §§ 131, 137; Matter of Walsh, 147 Misc. 281, 264 N.Y.S. 72; Osborn v. Banker's Trust Co., 168 Misc. 392, 5 N.Y. S.2d 211, 214; In re Brooklyn Trust Co., 163 Misc. 117, 295 N.Y.S. 1007, 1020. See also:

In re Sampson, Law Reports, 1906, 1 Ch. 435, 439; In re Newen, Law Reports, 1894, 2 Ch.Div. 297, 309; In re Skeat's Settlement, Law Reports, 1889, 42 Ch.Div. 522, 527; Estate of Wilson v. Comm., 13 T.C. 869; Allen v. Nunnally, 5 Cir., 180 F.2d 318, 320.

Additional, January 1944, P. 190, L. O. (Paid July 20, 1943) ........... 73,563.54 $73,661.28
Net tax liability.............. 13,773.44
Overpayment of tax (Sec. 912 of the Internal Revenue Code [26 U.S.C.A. § 912]) ........ $59,887.84
No claim for refund filed.
Deficiency notice mailed March 23, 1943.
Petition filed June 10, 1943.

"(b) That the Court may enter its decision that there is an overpayment in estate tax in the amount of $59,887.84; and may determine as a part of its decision that such amount was paid after the filing of the petition."

On September 29, 1944, the Tax Court entered its decision, reading as follows:

"Under written stipulation signed by counsel for the parties in the above-entitled proceeding and filed with the Court on September 25, 1944, at Chicago, Ill., it is

"Ordered and Decided: that there is an overpayment in estate tax of $59,887.84, which amount was paid after the filing of the petition."

One-half of the refund was credited to the estate of the decedent and the other one-half to the estate of McIllvaine.

The Commissioner had excluded from the gross estate of decedent under 26 U.S.C.A. § 812(c) $78,582.35 on account of property of the Harmon trust which came to the decedent. After the instant case reached the Tax Court, the Commissioner in his answer alleged that he had erred in making such exclusion from the gross estate of decedent and sought correction of that alleged error by the Tax Court.

26 U.S.C.A. § 812(c) in part reads: *"Property previously taxed.* An amount equal to the value of any property (1), forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, * * * where such property can be identified as having been received * * * from such prior decedent by gift,

bequest, devise, or inheritance, * * *. This deduction shall be allowed only where * * * an estate tax imposed under this chapter or any prior Act of Congress, was finally determined and paid by or on behalf of * * * the estate of such prior decedent, * * * and only in the amount finally determined as the value of such property in determining the value of * * * the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate, * * *."

Harmon died within five years prior to the date of the death of decedent. One-half of the property in the Harmon trust came to the estate of decedent by gift or bequest and could be identified as having been so received. An estate tax imposed under Chapter Three of the Internal Revenue Code was finally determined and paid on behalf of the estate of Harmon. The Commissioner included the whole of the Harmon trust property in the gross estate of Harmon at a finally determined value of $430,716.

The Harmon estate tax was an entirety. It was a single tax, based on percentages of the value of the entire Harmon net estate. It was not an aggregation of separate taxes upon the separate items, or any one or more of them, which made up the net taxable value of such estate.[5]

Regulations 105, § 81.2, Estate Tax, Internal Revenue Regulations, in part, provides: "The Federal estate tax is neither a property nor an inheritance tax. It is imposed upon the transfer of the entire net estate and not upon any particular legacy, devise, or distributive share."

It will be noted that § 812(c), supra, does not require that an estate tax be assessed and paid on the entire net estate of the prior decedent, as determined by the Commissioner, but only that an estate tax be finally determined and paid by, or on behalf of, the estate of the prior decedent. Ordinarily, an estate tax is paid on the entire net value of the estate, fixed by the Commissioner, but that is never true where the

---

5. Guettel v. United States, 8 Cir., 95 F.2d 229, 230; Cleveland v. Higgins, 2 Cir., 148 F.2d 722, 723; Van Dyke v. Kuhl, 7 Cir., 171 F.2d 187, 189.

tax paid is the result of a compromise, unless the gross estate is adjusted by exclusions so that the estate tax computed on the entire amount of the net estate will equal the amount of tax agreed upon as a compromise. I do not think Congress intended to deny exclusion under § 812(c), supra, from the gross estate of the subsequent decedent, where the tax paid by the estate of the prior decedent, as the result of a compromise, was not the full amount determined by the Commissioner, and grant exclusion only in cases where the tax finally determined and paid was the tax on the entire net estate as determined by the Commissioner.

Under the facts presented on this record, the reasons which actuated the Commissioner in accepting the offer of compromise, in my opinion, are not material. The tax paid was on the entire net estate, and not upon any particular legacy or distributive share which made up the gross estate. It cannot be said that the tax was paid on one-half of the McIllvaine one-half of the Harmon trust property, since the whole of the Harmon trust property was included by the Commissioner in the gross estate of Harmon and no part thereof was ever excluded therefrom.

Had the Commissioner so chosen, he could have insisted on a stipulation that the decedent's one-half and one-half of the McIllvaine one-half of the Harmon trust property should be excluded from the gross estate of Harmon, and the tax computed accordingly, and thereby arrived at a deficiency identical in amount with the deficiency that was stipulated. However, he elected not to follow that course, but to simply stipulate as a compromise, the amount of the tax liability on the entire net estate.

Where a taxpayer has two courses of procedure open to him to obtain a desired result, one of which, if carried out, results in the incurring of a tax liability, and the other, if carried out, will not result in the accrual of a tax liability, and he elects to follow the former, either because of ignorance or ill advice as to the tax consequences, this court and other courts have held that he incurs, and must pay, the tax.[6] The same rule should apply equally to the United States.

It is my opinion, that with respect to the one-half of the Harmon trust property which came into the estate of the decedent, each of the prerequisites to exclusion under § 812(c), supra, were present, and that the value thereof should have been excluded from the gross estate of decedent.

For the reasons indicated, I would reverse No. 3993 and affirm No. 3994.

6. Bonham v. Commissioner of Internal Revenue, 8 Cir., 89 F.2d 725, 728; Curtis v. Commissioner of Internal Revenue, 8 Cir., 89 F.2d 736, 738; United States v. Safety Car Heating Co., 297 U.S. 88, 98, 56 S.Ct. 353, 80 L.Ed. 500; Clemmons v. Commissioner of Internal Revenue, 5 Cir., 54 F.2d 209, 211; Davidson v. Commissioner of Internal Revenue, 305 U.S. 44, 46; 59 S.Ct. 43, 83 L.Ed. 31; Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Scott v. Commissioner of Internal Revenue, 8 Cir., 117 F.2d 36, 39; Wichita Term. El. Co. v. Commissioner of Internal Revenue, 10 Cir., 162 F.2d 513, 515.