James Cameron CLARK, Jr., and Minot K. Milliken, as Executors of the Estate of Edith S. Fabbri, Deceased,

v.

UNITED STATES of America.

Civ. No. 1073.

United States District Court
D. Maine, N. D.

Sept. 26, 1958.

Philip Lovell, Ellsworth, Me., Louis S. Auchincloss, and Charles L. Kades, Hawkins, Delafield & Wood, New York City, for plaintiffs.

Peter Mills, U. S. Atty., Portland, Me., Rufus E. Stetson, Jr., Dept. of Justice, Tax Division, Washington, D. C., for defendant.

GIGNOUX, District Judge.

This matter comes before the Court upon plaintiffs' motion for judgment on the pleadings and defendant's cross-motion for judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

The principal action was brought by complaint filed March 24, 1958 pursuant to the provisions of 28 U.S.C.A. §§ 1340

and 1346(a) (1). It seeks recovery of $175,199.49 of Federal estate tax, with interest, alleged to have been erroneously assessed and collected from plaintiffs. The only question presented is whether or not the corpus of a trust created in 1926 by Edith S. Fabbri, plaintiffs' decedent, is includible in her estate, and therefore taxable, by reason of § 2038(a)(2) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2038(a) (2), because at the date of her death the decedent had an unexercised power to appoint a substitute for one of two persons who acting jointly could have terminated the trust.

Section 2038(a)(2) of the Internal Revenue Code of 1954 provides in pertinent part as follows:

"§ 2038. Revocable transfers

"(a) *In general.*—The value of the gross estate shall include the value of all property * * *

"(2) *Transfers on or before June 22, 1936.*—To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *."

The uncontroverted facts as disclosed by the pleadings are as follows:

On October 22, 1926 the decedent established a trust, with The Bank of New York and Trust Company as trustee, pursuant to which the trustee was directed to pay and apply the income of the corpus of the trust for the use of the grantor during her life and thereafter for the use of her daughter, Teresa, during her life. Upon the death of the survivor of the decedent and her daughter, the trustee was further directed to transfer and pay over the principal of the trust fund to the daughter's descendants then living, *per stirpes* and not *per capita.*

Section III of the trust indenture provided for termination of the trust as follows:

III. The trust and trusts created by this instrument are hereby specifically declared to be terminable either in whole or in part, and the principal constituting the said trust fund shall be payable either in whole or in part, at any time upon said J. William Clark and said John V. Irwin, or their successor and successors, or by those who may be appointed by the Grantor in the place and stead of said J. William Clark and of said John V. Irwin or of either of them, signing and causing to be delivered to said Trustee a written and duly acknowledged instrument directing that the said trust or trusts or certain parts thereof terminate and come to an end, and/or that the principal constituting the said Trust Fund, or certain parts thereof, be paid out, in which event the principal thereof to the extent so directed shall forthwith be paid by the said Trustee to the person or persons then in being, who are entitled, at the time or times when said direction is given to the income thereof under the provisions of this instrument.

Section IV of the indenture provided that in the event of the death of either of the terminators so named, or of their successors, successors should be jointly appointed by the trustee and the person then entitled to the income of the trust.

Section V of the indenture reserved the following right to the grantor:

V. The Grantor has the right and power to revoke the appointment as contained in paragraphs numbered II and III, hereof, with respect to J. William Clark and/or John V. Irwin, and to appoint another person in the place and stead of each and/or of either or both of them who shall have full power and authority to exercise all the powers given said J. William Clark and/or said John

V. Irwin in and by the provisions of this instrument. The revocation and appointment to be effective shall be evidenced by a duly acknowledged instrument in writing, to be filed herewith.

J. William Clark died in 1930, and the decedent, with the trustee's approval, appointed Dave H. Morris, Jr. to succeed him. At the decedent's death, on December 17, 1954, both Dave H. Morris, Jr. and John V. Irwin were living, and their appointments were in full force and effect. The decedent never used her power to revoke the appointment of the terminators reserved in Section V of the indenture, nor was the trust itself ever revoked in part or in whole by the terminators during her lifetime.

On or about March 14, 1956, plaintiffs filed an estate tax return for decedent's estate, which showed a total gross estate of $527,321.69, with a total estate tax payable of $86,979.70, payment for which accompanied the return. The return did not include in the decedent's gross estate any portion of the value of the corpus of the trust created by her in 1926. The report of the Internal Revenue Agent auditing the estate tax return increased decedent's net estate by $538,019.16, the amount of the corpus of the trust (less allowed additional administrative expenses of $871.76), causing a deficiency of $162,652.48 in tax, plus interest on the deficiency of $12,547.01, on the sole ground that the trust was subject to estate tax under § 2038(a) (2) of the Internal Revenue Code of 1954. Plaintiffs executed a Form 890 waiver consenting to the assessment and collection of the deficiency, and in October, 1957 made payment to the District Director of Internal Revenue at Augusta, Maine, in the amount of $175,199.49. In November, 1957, plaintiffs timely filed with the District Director a claim for refund, which was disallowed on or about February 27, 1958.

The question is whether the decedent on the date of her death, December 17, 1954, had power, either alone or in conjunction with any person, to alter, amend or revoke the trust within the meaning of § 2038(a) (2), supra.

Obviously, not being a terminator on the date of her death, the decedent had no such direct power. Defendant contends, however, that on the date of her death the decedent had the power under Section V of the Indenture to revoke the appointment of John V. Irwin and to appoint herself as a successor terminator in his stead,[1] and that she could then under Section III of the Indenture, acting in conjunction with Dave H. Morris, Jr., have revoked or terminated the trust by written direction to the trustee. Under the rule of Loughridge's Estate v. Commissioner, 10 Cir., 1950, 183 F.2d 294, certiorari denied, 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609, defendant argues that the decedent must be considered to have had the revoking power of the terminator on the date of her death. Plaintiffs, on the other hand, distinguish Loughridge on the ground that, although at the time of her death the decedent possessed the power to appoint a successor to John V. Irwin, she could not have named herself as such; and on the further ground that, even if she could have appointed herself terminator, the power to terminate existed only in combination with a co-terminator, whom she could not have replaced, and, hence, there was no retention of control by the decedent within the interdict of the statute.

The Loughridge rule may be summarized as follows: If a trustee has the power to revoke a trust, and if the creator of the trust has the power to revoke the trustee's appointment *and ap-*

1. At the time of her death the indenture gave the decedent *only* the power to revoke the appointment of John V. Irwin and to appoint a successor terminator in his stead. Dave H. Morris, Jr. had been named as a terminator to replace J. William Clark, who had died, and the indenture contained no provision for the revocation of the appointment of a successor terminator. The Morris appointment was, therefore, irrevocable. Section V, supra.

*point himself in his place,* then the creator of the trust will be deemed to have the revoking power of the trustee.[2]

It is to be noted at the outset that in Loughridge, the creator of the trust had reserved to himself the power to revoke the appointment of the corporate trustee and to name a successor trustee. The trustee had the power to terminate the trust, in whole or in part, and to pay over the corpus to the then income beneficiary, but not to the grantor. The Court concluded that the grantor had the power to name himself as successor trustee and thus clothe himself with a power to terminate the trust. It mattered not that the grantor lacked power to recapture the principal of the trust for, as the Court stated (183 F.2d 294, at page 300):

> "It lay within the ambit of the power of decedent in his discretion to determine whether the beneficiaries should merely have the contingent right of future ownership and enjoyment, or immediate ownership and enjoyment, free of trust or like limitation. His power under the trust instrument affected not only the time of possession and enjoyment but also the person or persons who might come into ownership and enjoyment of the property. The reservation of power to shift or vary in that manner the interests of the beneficiaries was a substantial attribute of ownership and control. And a donor who keeps within the range of his power such sweeping hold over the possession and enjoyment of trust property has not divested himself of the degree of control required by the statute in order to avoid liability for estate tax."

If the Loughridge rule is applicable, then *a fortiori* the decedent in the instant case has not divested herself of the degree of control required to avoid liability for estate tax, since here the trust corpus would have returned to the decedent herself upon termination of the trust during her lifetime. Section III, supra.

By stipulation of the parties, Edith S. Fabbri's trust, having been executed and administered in New York, has its situs in New York and must, like the Loughridge trust, be construed under the laws of New York. And, as did the plaintiff in Loughridge, plaintiffs here argue that the law of New York precludes the creator of a trust from appointing himself a successor trustee, since the creator, if he appointed himself trustee, would receive commissions and other personal benefits. The law of New York on this question, is, at best, unclear.[3] However, it is not material to the instant case because neither J. William Clark nor John V. Irwin was a trustee of the trust created by this decedent. Their only power was, acting together, to terminate the trust and to cause the principal to be restored to the decedent, or, if she was no longer living, to her daughter. It is further to be noted that the trust instrument makes no provision for the payment of commissions or other personal benefits to the terminators.

To escape the force of the Loughridge rule, plaintiffs consequently argue that this case is distinguishable precisely because the Loughridge case and the regulation apply to *trustees* and not to *terminators* and, strictly speaking, have no application to the case at bar. In the opinion of this Court the distinction is without substance. Terminology will not be permitted to defeat statutory intent.

Plaintiffs further contend that the language of the trust instrument itself would not have allowed Edith S. Fabbri to name herself as a successor terminator to John V. Irwin because it states (Sec-

---

2. The Loughridge rule has to some extent been adopted in Treasury Estate Tax Regulations, § 20.2038–1, which provides: "* * * if the decedent has the unrestricted power to remove or discharge a trustee at any time and appoint himself trustee, the decedent is considered as having the powers of the trustee."

3. See dissenting opinion of Phillips, C. J., in Loughridge, 183 F.2d 294, at page 306, and cases cited therein in Footnote 4.

tion V, supra): "The Grantor has the right and power * * * to appoint *another* person * * *" (emphasis supplied). Plaintiffs cite some English[4] but no American authority to support the argument that "another" in this trust instrument must be construed to mean not only *other than* the original appointee, but *other than* the grantor. The English cases cited by plaintiffs involved the appointment of a successor trustee and not a terminator. They are grounded upon the same conception of the fiduciary responsibility of a trustee as that asserted in support of the claimed application of New York law previously mentioned. As noted, the Court is presently concerned with the power to appoint a terminator and not a trustee. The more natural meaning to give the word "another" in this trust instrument is to say that it means other than the person to be replaced. In the absence of controlling law which would have precluded the decedent from appointing herself as a co-terminator of the trust, this Court concludes that the word "another" in the instant instrument means no more than someone other than the person who previously held the position.

Finally, plaintiffs assert that even if the decedent could thus have appointed herself, she was still powerless to revoke the trust because she could act only in concord with Morris. Case law is hardly necessary to dispose of this contention when the statute itself proscribes a power capable of exercise "either by the decedent alone, *or in conjunction with any person* * * *." (Emphasis supplied.)

It is the opinion of this Court that at the date of her death, Edith S. Fabbri *could* have appointed herself as a terminator of her trust. Under Loughridge, this Court concludes that for the purposes of Federal estate taxation she should be treated as if she *had* so appointed herself. Acting in conjunction with Morris, she could then have termi-nated the trust. The power to "alter, amend, or revoke" denounced by § 2038 (a) (2) includes a power to terminate. Commissioner of Internal Revenue v. Estate of Holmes, 1946, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228. The power she possessed is within the terms of § 2038 (a) (2). The trust property is includible in her estate.

The motion of the plaintiffs for judgment on the pleadings is denied. The defendant's cross-motion is granted.

Judgment will be entered for the defendant with costs.

4. In re Skeats' Settlement, 42 Ch.Div. 522 (1889); In re Newen, (1894) 2 Ch. 298; In re Sampson (1906) 1 Ch. 435; Power's Settlement Trusts, (1951) 1 All Eng. R. 932, affirmed 2 All.Eng.R. 513; cf. Montefiore v. Guedella, (1903) 2 Ch. 723.