James Cameron CLARK, Jr., et al., Executors, Plaintiffs, Appellants,

v.

UNITED STATES of America, Defendant, Appellee.

No. 5427.

United States Court of Appeals First Circuit.

June 4, 1959.

**502**

Charles L. Kades, New York City, with whom Louis S. Auchincloss, New York City, and Geoffrey A. Sawyer, Boston, Mass., were on brief, for appellants.

L. W. Post, Attorney, Department of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, and Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., Peter Mills, U. S. Atty., and Elmer E. Runyon, Asst. U. S. Atty., Portland, Me., on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Maine, entered pursuant to an order granting the government's cross-motion for judgment on the pleadings in a case initiated by the executors of the estate of Edith S. Fabbri, deceased, seeking recovery of an alleged overpayment of estate taxes. Clark v. United States, D.C.1958, 167 F.Supp. 54.

The judgment appealed from was entered September 26, 1958. Notice of appeal was filed by the taxpayers on October 24, 1958, and appellants submitted to this court on November 7, 1958, their statement of the parts of the record they proposed to print in the appendix to their brief and their statement of points to be relied upon on appeal, as required by our Rule 24(2), 28 U.S.C.A.

The case as presented in the district court was strikingly similar to Van Beuren v. McLoughlin, argued before us on November 5, 1958. On December 12, 1958, we decided the Van Beuren case in favor of the government without having had called to our attention the similar decision of the district court in the case at bar. Van Beuren v. McLoughlin, 1 Cir., 262 F.2d 315, certiorari denied May 18, 1959, 359 U.S. 991, 79 S.Ct. 1120, 3 L.Ed.2d 979.

In Van Beuren v. McLoughlin, we were dealing with a trust set up by the decedent in her lifetime in which the named trustee was given power (acting in concert with others) to alter, amend, or revoke the trust, in so far as the income therefrom was concerned, and in which the grantor reserved to herself a power to remove the trustee "and to appoint a new Trustee" in his place. We held that the grantor during her lifetime could have removed the trustee and appointed herself in his stead, and that the trust therefore fell within the meaning of § 811(d) (2) of the 1939 Code, 26 U.S.C.A. § 811(d) (2), which provided that the gross estate of the decedent should include the value at the time of her death of all property "[t]o the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *." We cited in support of our conclusion the decision of the majority of the Court of Appeals for the Tenth Circuit in Loughridge's Estate v. Commissioner, 1950, 183 F.2d 294, certiorari denied 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609.

The present estate happens to come under § 2038(a) (2) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2038(a) (2), but this section is substantially identical in its provisions with § 811(d) (2) of the 1939 Code involved in the Van Beuren case.

■ There are some other distinctions between the two cases, which we regard as similarly trivial and immaterial. Thus, the power conferred by this grant-

or was a power to "terminate" the trust rather than a power to "alter, amend, or revoke", which is the statutory language. It is clear nevertheless that a power to "terminate" is equivalent to a power to alter, amend, or revoke. See Commissioner of Internal Revenue v. Estate of Holmes, 1946, 326 U.S. 480, 487, 488, 66 S.Ct. 257, 90 L.Ed. 228. This would especially be so in a case like this one where, under the terms of the trust, a termination would result in revesting the corpus of the trust in the grantor, which is exactly what a revocation would do.

Also, unlike the Van Beuren case, here the full corpus of the trust is at stake because the power to terminate directly affects the enjoyment of the principal, whereas there the power to amend affected only the life estate. But this has no relevance to our decision whether the trust is includable under controlling law.

■ Nor do we think there is any substantial difference in the language of the present trust which would require us to hold, contrary to the conclusion reached in the Van Beuren case, that under the New York law the grantor-decedent would not have been authorized to substitute herself for one of the persons empowered in the instrument to terminate the trust. In the instant case, the grantor reserved to herself the power "to appoint another person in the place and stead" of one of the individuals given the power to terminate by the trust instrument, whereas Mrs. Van Beuren reserved a power "to appoint a new Trustee". We cannot say that this variation of the phraseology is so important as to require a reading of the word "another" in the quoted power (Art. V) to mean "other than the grantor". We think that, by the normal and proper reading of the words, "another person" means a person other than the displaced terminator, which would include the grantor. Certainly it is clear under the New York law that the grantor could originally have named herself as one of the two having power to terminate the trust, and we don't see why she should

not have been able to reserve the same power for exercise later.

With this background, we may now state in more detail the facts of the present case. On October 22, 1926, Edith S. Fabbri, a resident of Maine, executed in New York an indenture of trust by which she conveyed securities to The Bank of New York and Trust Company (a New York corporation) upon certain trusts. The only person the instrument specified as a "Trustee" and the only one who executed the instrument as grantee therein was the New York corporation. The trustee was directed to pay the income "to and for the use of the Grantor during her life, and upon Grantor's death, in case her daughter, Teresa Fabbri Clark, survives the Grantor * * * to Grantor's said daughter during her life". Upon the death of the survivor of these two, the principal was to be paid over to the then living descendants of Teresa, *per stirpes,* or if none, as directed by Teresa in her will, or, in default of appointment, to those persons who took under the residuary clause of the grantor's will.

Article II provided for the management of the trust fund. In particular, it conferred management powers upon two persons in the following terms: "[T]he Trustee may hold the securities hereinbefore named, which are the subject of this trust, unless requested to sell or exchange all the same or any portion of the same by the following persons, namely: J. William Clark and/or John V. Irwin [or their successors in office] * * * and the Trustee shall make such investment and reinvestment of the Trust Fund as it and the said persons * * * shall agree upon."

Article III read: "The trust and trusts created by this instrument are hereby specifically declared to be terminable either in whole or in part, and the principal constituting the said trust fund shall be payable either in whole or in part, at any time upon said J. William Clark and said John V. Irwin [or their successors in office] signing and causing to be delivered to the said Trustee a written and

duly acknowledged instrument directing that the said trust or trusts or certain parts thereof terminate and come to an end, and/or that the principal constituting the said Trust Fund, or certain parts thereof, be paid out, in which event the principal thereof to the extent so directed shall forthwith be paid by the said Trustee to the person or persons then in being, who are entitled, at the time or times when said direction is given to the income thereof under the provisions of this instrument." The recipient of the principal, in the event of such termination, being thus limited to the person designated by the instrument to receive the income, it follows that, had the trust been terminated under this article at any time during the grantor's life, she would have received the principal.

Article IV provided for the appointment by the income beneficiary (that is, the grantor during her life) and the trustee of successors to Clark or Irwin or their successors, in the event of death.

Article V reserved to the "Grantor * * * the right and power to revoke the appointment as contained in paragraphs numbered II and III, hereof, with respect to J. William Clark and/or John V. Irwin, and to appoint another person in the place and stead of each and/or of either or both of them".

Sometime after the execution of the indenture J. William Clark died, and one Morris was duly appointed as Clark's successor pursuant to the reserved power in Art. IV. It seems apparent from the phraseology of Art. V, and the government so conceded, that the appointment of Morris was not revocable by the grantor. Thus the grantor, under Art. V, had at the time of her death only the power to appoint someone to replace Irwin, who then could act together with Morris. This fact is not significant under I.R.C. § 2038(a) (2) if, as we hold, the grantor could have substituted herself in place of Irwin, since the cited section imposes an estate tax upon the decedent who at the time of death had a power to alter, amend, or revoke, even if such power is exercisable only "in conjunction with any person".

Mrs. Fabbri died in Maine on December 17, 1954, and the plaintiffs-appellants were duly appointed executors of her estate. At the time of her death she had never exercised her power under Art. V of the trust, and Irwin remained in office. Nor had the Art. III power of termination been exercised. Still, as we pointed out in the Van Beuren case, 262 F.2d at pages 316–317:

"Section 811(d) (2) is sweeping, and perhaps ruthless, in its application. It does not depend upon finding a motive of tax avoidance. Nor does it depend upon whether the grantor ever attempted to exercise the power; it is the existence of the power, not its exercise, that is important. Nor does it matter that the power is reserved to the grantor not in his capacity as grantor but only in a fiduciary capacity. See Welch v. Terhune, 1 Cir., 1942, 126 F.2d 695, certiorari denied 1942, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. And, as we held in Chickering v. Commissioner, 1 Cir., 1941, 118 F.2d 254, 139 A.L.R. 508, certiorari denied 1941, 314 U.S. 636, 67 S.Ct. 70, 86 L.Ed. 511, it does not matter that the reserved power of amendment is a limited power under which the grantor in no event could revest in herself the donated interest but could only apportion the trust income and corpus among her children or disinherit them wholly or in part, in favor of other persons. Nor does it matter, so far as the estate tax is concerned, that the described power is reserved by the grantor only in conjunction with the consent of some other person, whether or not that other person has some interest in the trust adverse to the exercise of the power."

In the exigencies of the case before the district court, taxpayers persuaded the district judge that Clark and Irwin were not trustees—thus apparently hop-

ing to escape from the applicability of Loughridge's Estate v. Commissioner, supra, 183 F.2d 294. We think it obvious enough from the trust instrument that Clark and Irwin indeed were not "trustees" in the purest technical sense, as, for example, they did not hold the legal title to the *res*, though they may have held their powers under Art. II and Art. III as fiduciaries subject to the control of a court of equity.

Appellants then advanced a wholly new contention on appeal, which they first made in their principal brief in this court, and on which, in view of our intervening decision in Van Beuren v. McLoughlin, they primarily relied in their reply brief and on oral argument. They now say, contrary to their theory in the district court, that Irwin was a trustee and that, even if Mrs. Fabbri had succeeded in substituting herself in place of Irwin, she would have been forbidden to exercise Irwin's power of termination because of the prohibition contained in § 141 of the Real Property Law of New York, reading, as amended in 1945 (and, in a regard not here relevant, 1947), as follows:

> "A power may be vested in any person capable in law of holding, but can not be exercised by a person not capable of transferring real property. A power, vested in a person in his capacity as trustee of an express trust, to distribute principal to himself cannot be exercised by him; if the power is vested in two or more trustees, it may be executed by the trustee or trustees who are not so disqualified; if there is no trustee qualified to execute the power, its execution devolves on the supreme court * * *."

The New York law with reference to powers has taken a somewhat odd course. Section 130 of the Real Property Law, which derives originally from § 73 of the old Revised Statutes, provides as follows:

> "Powers, as they existed by law on the thirty-first day of December, eighteen hundred and twenty-

nine, are abolished. Hereafter the creation, construction and execution of powers, affecting real property, shall be subject to the provisions of this article; but this article does not extend to a simple power of attorney to convey real property in the name and for the benefit of the owner."

The legislature has never enacted comparable provisions with reference to powers in the Personal Property Law.

In this case, the property conveyed in trust originally was personal property exclusively, and thus it may be wondered whether § 141 of the Real Property Law has any possible application. Under the provisions of the trust instrument, there was nothing to prevent the acquisition of real property by the trustees in lieu of the original personal property conveyed, though the present record contains no evidence that this was done, perhaps because the application of § 141 was not made an issue in the district court.

Of course, it might be held in the New York courts that the specific provisions with reference to powers, as they appear now in the Real Property Law, were intended also to be applicable to powers affecting personal property. This would be a sensible result and all right, though it might be somewhat of a strain upon the concept of statutory interpretation. At any rate, there are expressions in the New York cases which seem more or less to point that way. See Cutting v. Cutting, 1881, 86 N.Y. 522, 544, 547; Hutton v. Benkard, 1883, 92 N.Y. 295, 305–306; Matter of Moehring, 1897, 154 N.Y. 423, 48 N.E. 818; Matter of Cocksey's Estate, 1905, 182 N.Y. 92, 97, 74 N.E. 880; Osborn v. Bankers Trust Co., 1938, 168 Misc. 392, 5 N.Y.S.2d 211. If the New York courts say that is what § 141 of the Real Property Law means, this is an end of the matter in the federal courts. Or these cases may only mean that, as a matter of common law decision, the rules which the legislature enacted with reference to powers in the Real Property Law are to be applied "by analogy" in the case of powers relating

to personal property. Nevertheless, so far as the state law of New York is concerned, which is binding upon us, the result would be the same.

Appellants' argument referring to § 141, if accepted, would have this curious and ironic result: because the grantor reserved a sufficiently great interest in the trust property, viz., a right to the principal if the trust were terminated during her life, the property is not includable in her gross estate; whereas if she had not reserved this interest, the property would clearly be so includable under our decision in the Van Beuren case.

However, it is by no means clear, under the decided cases, that § 141 of the Real Property Law of New York would have prevented Mrs. Fabbri from exercising the power of termination, had she substituted herself for Irwin. The trust in question is surely an "express trust" within the meaning of § 141. But it is not easy to say that Irwin was a "trustee of an express trust" when the grantor herself did not even call him a trustee. See Heyman v. Heyman, Sup.Ct.1942, 33 N.Y.S.2d 235. Cf. Reinecke v. Smith, 1933, 289 U.S. 172, 174, 53 S.Ct. 570, 77 L.Ed. 1109. And certainly Mrs. Fabbri was not a trustee of an express trust, nor would she have been such if she had substituted herself for Irwin. She held at her death the power to terminate the trust, not in any capacity as trustee of an express trust, but for the reason that she had reserved to herself in her capacity as grantor of a trust the power to remove Irwin and substitute herself in his place. Section 141 may therefore be inapplicable. Furthermore, even if she had substituted herself for Irwin, it might be suggested that she had no power in that capacity "to distribute principal" to herself; she would have had a power merely to terminate the trust, in which event it would then have become the duty of the corporate trustee, in accordance with the terms of the trust, to pay over the corpus to the person who was then entitled to the income, which in this trust was the grantor

so long as she was alive. See, however, the discussion in Rogers v. Rogers, 1888, 111 N.Y. 228, 18 N.E. 636.

Be that as it may, we do not think that we should have to concern ourselves in the present circumstances with resolving this very difficult question of New York law. If we should consider it, and decide it in favor of the contentions of the taxpayers, we would in effect have to charge the district judge with error in failing to give full faith and credit to the New York statute and decisions, though none of these materials was called to his attention. Cf. 4 Barron, Federal Practice and Procedure (1951) § 2155. In addition to that, appellants made no reference to § 141 of the New York Real Property Law in their statement of points on which they intended to rely upon appeal. These points were stated to be as follows:

"1. The District Court erred in applying the rule of Loughridge's Estate v. Commissioner, 10 Cir., 1950, 183 F.2d 294, certiorari denied 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609, and Treasury Estate Tax Regulations, § 20.2038-1 to the case at bar because the said rule and regulation have application only to trustees and not to persons whose power over a trust is limited to a power of termination.

"2. The District Court erred in deciding that Edith S. Fabbri had power under her 1926 deed of trust to appoint herself a terminator of the trust in place of John V. Irwin or J. William Clark.

"3. Edith S. Fabbri's unexercised power to appoint a substitute for one of two persons who acting jointly could have terminated the trust under her 1926 deed did not make the value of the principal of the trust includible in her estate under § 2038(a) (2) of the Internal Revenue Code of 1954."

Only the third of these points could possibly pertain to § 141, and what is there said does not suggest a disability of

Mrs. Fabbri, after a hypothetical substitution, to exercise the power of termination. It does not seem to us that any reasonable interpretation of point 3 quoted above could comprehend the argument based upon § 141.

While we no doubt have power to go ahead and dispose of the case finally, which we would surely do if we felt entirely confident of the issue as to the New York law, yet as a matter of discretion we think that the judgment of the District Court should be vacated and the case remanded to that court for consideration in the first instance of this new argument raised by the taxpayers with respect to the New York law. Perhaps some of the ambiguities which cloud the case can be clarified by factual evidence proving, for example, the nature of the corpus and the intention of the parties to the trust indenture.

A judgment will be entered vacating the judgment of the District Court and remanding the case to that Court for further proceedings not inconsistent with the foregoing opinion.