ESTATE OF ARTHUR KLAUBER, DECEASED, CHARLES J. TANENBAUM AND EDWARD KLAUBER, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65875.   Filed September 15, 1960.

*Charles J. Tanenbaum, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

### OPINION.

FORRESTER, *Judge:*   The respondent has determined a deficiency of $103,026.17 in the estate tax of the decedent, Arthur Klauber. The principal issue for decision is whether there should be included under section 811(c)(2), I.R.C. 1939,[1] the corpus of a trust created by decedent on June 4, 1932, wherein decedent reserved two possible reversions, certain powers of invasion and a secondary life estate.[2]

The above resolves itself into three subordinate issues as follows:
1. Whether decedent could, under applicable State law and the

---

[1] All references to Code sections are to the Internal Revenue Code of 1939.
[2] Our resolution of this issue makes decision of an alternative ground for inclusion of a part of corpus under section 811(d)(2) unnecessary.

terms of the trust, remove at will his individual cotrustee (said individual cotrustee having the power, with decedent, to pay corpus in specified amounts) and appoint a successor whom he could dominate; and if so, whether this right gave decedent a "reversionary interest" as described in section 811(c)(2);

2. If so, whether such powers required the inclusion of the entire trust corpus under section 811(c)(2); and

3. Whether the reversions, the secondary life estate, and decedent's powers of invasion can be added together in determining whether the requisite interest under section 811(c)(2) exists.

A further issue for decision is whether a power to terminate the trust, vested in a third party and admittedly of no determinable value, can be considered in evaluating decedent's reversionary interest.

The facts have been stipulated and are so found. Said stipulations are incorporated herein by this reference. Those facts necessary to an understanding of the case follow.

Decedent died on November 7, 1952, at age 70, a resident of New York State. He was survived by his wife, Ethel Klauber, and their daughters, Louise Klauber and Helen Klauber. The executors herein were duly qualified, letters testamentary having been granted to them by the Surrogate's Court of New York County. The decedent's estate tax return was filed by the executors with the district director of internal revenue for the Upper Manhattan District.

On June 4, 1932, the decedent as settlor transferred certain cash and securities to himself, his brother Edward Klauber, and the Bank of New York and Trust Company, as trustees under a trust agreement. The corpus of the trust estate was to be divided into two equal parts. Under the first part (hereinafter referred to as part (A)) the net income from the trust corpus was to be payable to the decedent's wife, Ethel Klauber, for her life. At her death, the income was to be paid to the decedent, if surviving, for his life; if the decedent were not surviving at his wife's death the income was to be paid or accumulated in the trustees' discretion for the benefit of their daughter, Louise Klauber, until she reached age 21, at which time any accumulated income was to be paid to her and income thereafter earned was to be paid to her for her life. At decedent's death the income was to be payable to his daughter, Louise Klauber, in a similar manner.

The trust was to terminate at the death of the survivor of Ethel Klauber and Louise Klauber. On such event, the corpus was to return to the decedent, Arthur Klauber, if he were alive. Otherwise, the corpus was to go to certain named parties. Under the second part of the trust (hereinafter referred to as part (B)) the corpus was to be held on terms identical to those relating to the first part

except that the name of the settlor's other daughter, Helen Klauber, was substituted for Louise Klauber each time the latter's name appeared in part (A).

The trust provided, *inter alia:*

THIRTEENTH: The Settlor shall likewise have power to request the resignation of the Trustees, or any of them, by delivery to them of an instrument in writing to that effect, executed and acknowledged by him. Upon the delivery of such instrument, the resignation of the Trustee or Trustees named therein shall be and become effective, and the Trustee or Trustees shall account for and duly assign, transfer and set over and surrender the Trust Estate to such other Trustee or Trustees as may be named and appointed by the Settlor, to whom the right to name and appoint other Trustees is hereby reserved, or shall relinquish all rights, title and interest to the remaining Trustee or Trustees, and upon so doing, the Trustee or Trustees whose resignations have been requested and shall have become effective, as hereinbefore provided, shall be relieved and discharged from all further obligations hereunder.

FOURTEENTH: This agreement and the Trusts herein created may, during the Settlor's life, be terminated at any time by the said EDWARD KLAUBER, brother of the Settlor, and one of the Individual Trustees named herein, or in case of his death prior to the termination of this agreement, and of the Trusts herein created, by the said MURRAY KLAUBER, another brother of the Settlor, and in case of his death prior to the termination of this agreement and of the Trusts herein created, by the said JEROME TANENBAUM, the said brother-in-law of Ethel Klauber, wife of the Settlor, upon delivering to the Trustees then acting an instrument in writing to that effect, signed and acknowledged by the said Edward Klauber, the said Murray Klauber or the said Jerome Tanenbaum, as the case may be. Should such an instrument be delivered, this agreement and the Trusts herein created, shall terminate and come to an end, and the said Trust Estate, and all monies, property, assets and securities, of every kind and nature whatsoever, then constituting such Trust Estate shall be transferred and paid over to the Settlor. The rights and interests of all beneficiaries and remaindermen hereunder shall at all times be subject and subordinate to the right to terminate this agreement, as hereinbefore provided.

\*    \*    \*    \*    \*    \*    \*

SIXTEENTH: In any year during the lifetime of the Settlor, the Trustees are hereby authorized and directed to pay, out of the principal of each Trust herein created, to those entitled to receive the income therefrom at such time, a sum not exceeding Two Thousand ($2,000.) Dollars, provided that the Individual Trustees then acting shall authorize such payment in writing.

The fair market value of the securities making up the principal of the above-mentioned trust was $353,323.63 on the date of decedent's death.

The present value of decedent's right immediately before his death to receive the corpus under part (A) was 2.991 per cent of the corpus of that part; the present value of his right under part (B) was 2.271 per cent of that corpus.

The present value of the decedent's contingent interest in income

under both parts, at his death, was not less than 4 per cent nor more than 8 per cent of the trust corpus.

The present value of the right to receive $4,000 per annum for the life of a person of decedent's age on November 7, 1952, was $31,280 or 8.853 per cent of the value of the trust corpus. The present value of such right for such time as both the decedent and his wife survived (in which case the amount would have been payable to his wife) was at least 6.3715 per cent of the value of the trust corpus on November 7, 1952.

The payments actually made to Ethel Klauber pursuant to paragraph Sixteenth of the trust, during the life of decedent, totaled $43,018.59. In no year did such payments exceed the sum of $4,000.

### Issue 1.   Power of Disposition by Decedent.

The respondent's principal contention is that we must consider decedent's powers under paragraphs Thirteenth and Sixteenth of the trust as placing within his control the power to dispose of corpus to the extent of $4,000 each year; that this amounts to an expressly retained reversionary interest stipulated to have exceeded 5 per centum of the value of the transferred property immediately before settlor's death; and that the entire corpus of the trust is therefore includible in decedent's gross estate under subparagraph (2) of section 811(c)[3] as a transfer taking effect at decedent's death.

---

[3] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *

      *      *      *      *      *      *      *

    (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

        (1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer * * *, by trust or otherwise—

      *      *      *      *      *      *      *

            (B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

            (C) intended to take effect in possession or enjoyment at or after his death.

Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

        (2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1)(C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. * * *

Respondent correctly points out that section 811(c)(2) expressly provides that "reversionary interest" includes a power of disposition by decedent under part (B) as well as a possibility of return to decedent or his estate under part (A) and that such reversionary interest had a value of $31,280 at decedent's death which was 8.853 per cent of the value of the trust corpus at that same time.

To this contention, petitioner answers (a) that decedent's powers were too "meager" to be a reversionary interest; and (b) that in any event, the powers were not exercisable solely by decedent and could not be so exercised under New York law.

Considering first petitioner's argument that the powers were not "a power by him [the decedent]," we shall assume that the section 811(c)(2) power, by reason of its contrast with sections 811(c)(1) (B) and 811(d)(2),[4] had to be exercisable by decedent alone. However, it is well recognized that where a decedent has an unrestricted right to remove those who may exercise a power, the power is deemed to be exercisable by him alone. *Estate of Paul Loughridge,* 11 T.C. 968, affirmed on this issue 183 F. 2d 294 (C.A. 10, 1950), certiorari denied 340 U.S. 830 (1950); *Clark v. United States,* 267 F. 2d 501 (C.A. 1, 1959).

Thus, decedent's power to secure the resignation of any trustees not amenable to his desire to exercise the power of invasion under paragraph Sixteenth of the trust distinguishes this case from *Commissioner* v. *Irving Trust Co.,* 147 F. 2d 946 (C.A. 2, 1945), and others relied on by petitioner. There, the trustee, a bank, had complete discretion to pay corpus to the settlor. In fact, the bank was "friendly" and did pay it over whenever the settlor requested. Yet the court excluded the corpus from the settlor's gross estate on the theory that there was no legal method by which decedent could assure himself of the corpus. This is the same principle which was utilized in *Estate of Edward Lathrop Ballard,* 47 B.T.A. 784 (1942), affd. 138 F. 2d 512 (C.A. 2, 1943), where decedent's wife had the power to alter, amend, or revoke a trust and yet we held the corpus nonincludible, saying at page 791:

Respondent has vigorously argued that for all practical purposes decedent had the power to amend or revoke the trust by virtue of his position as husband and head of family. He contends that decedent at all times possessed the power to alter or revoke the trust * * * because of the marital relationship, which the evidence shows was always harmonious. We reject this contention *because there is no indication that decedent had such control over his wife's actions as to permit the finding that he could, * * * amend or revoke the trust. * * ** As a matter of fact, the testimony of decedent's widow presented at the hearing indicates that *she gave considerable thought to the problems of the children's trust. She had been taught to handle money and*

---

[4] Dealing with revocable transfers.

*took care of her own financial affairs.* Thus, we do not feel that *Helvering* v. *Clifford*, 309 U.S. 331, and similar cases * * * have any application here. * * * [Emphasis supplied.]

The converse of this principle is that when the settlor is so able to dominate the nominal holder of the power as to make such party's individual judgment meaningless, the protection afforded by the *Irving Trust Co.* and *Ballard* cases is no longer available.

We conclude that the decedent here had the power to dominate.

But, petitioner argues that the New York courts under their equity powers could have enjoined removal of a trustee without appointment of a successor approved by the court. Petitioner relies primarily on language in *Guaranty Trust Co. of New York* v. *Mackey*, 178 Misc. 862, 36 N.Y.S. 2d 535 (1942). However, in that case the court exercised its power because the settlor, unlike the settlor in the instant case, had specified certain qualifications which the successor was required to possess. Thus, the court did not reject the general rule that where the substitution is in accord with the granted power, only very serious reasons will justify the court's veto of an appointed successor. In its dictum the court recognized that where an unlimited power of removal is given, equity has no control over the removal of the current trustee, and its control over the appointment of a successor is at most a negative power which will be exercised only where the appointment is clearly to the prejudice of the beneficiaries of the trust. Cf. *May* v. *May*, 167 U.S. 310 (1897), where there was great personal hostility between the trustees and the beneficiaries.

Accordingly, we hold that the beneficiaries here were powerless to thwart the decedent-settlor's removal of any trustee and appointment of one amenable to him.

Petitioner cites *Osborn* v. *Bankers Trust Co.*, 168 Misc. 392, 5 N.Y.S. 2d 211 (1938), for the proposition that decedent could not have exercised his paragraph Sixteenth powers in favor of himself. However, in that case the settlor, as trustee, had retained only a power to guide investments and had retained no reversionary interests in the trust. On such facts the court acted to prevent an indirect use of the settlor's power for a purpose contrary to the interests of the beneficiaries. The court's language indicated the reason for its holding (5 N.Y.S. 2d 215):

There is no evidence that * * * [settlor] intended to reserve to himself any power to *enjoy the corpus*, and he may not use the power for his own benefit directly or indirectly. * * * [Emphasis supplied.]

Thus, while the *Osborn* case and many others cited by it support the proposition that a New York trustee can be prevented from exercising his powers contrary to the intent of the trust, they

do not hold that a trustee who is clearly given the power to invade for his own benefit may not do so merely because other beneficiaries might object.[5]

Turning now to petitioner's argument that decedent's powers were too "meager" to be a reversionary interest, we believe the answer is that the reversionary interest concept must be read against the background of *Helvering* v. *Hallock*, 309 U.S. 106 (1940), and cases following it which taxed the entire corpus when there was any possibility that it might return to the grantor. The clear rationale of these cases is that the decedent is taxable wherever his death is the only event which will guarantee the ultimate beneficiaries that they will take and that the remainder will not be vested in the decedent or someone to be designated by him. See also *Fidelity Co.* v. *Rothensies*, 324 U.S. 108 (1945). The only change in the application of these cases effected by section 811(c)(2), which was enacted in 1949 as a modification of section 811(c)(1)(C),[6] is that remote reversions are excluded.

Nor does petitioner's reliance on *Costin* v. *Cripe*, 235 F. 2d 162 (C.A. 7, 1956), help it. There, the court pointed out that a reserved power to change the ultimate takers was within the *Hallock* rule and, since its value exceeded 5 per cent of the value of the corpus, the corpus was includible under section 811(c)(2). There the decedent could appoint to anyone save himself or his estate while here his power was somewhat more limited. But it is still not "meager" for it was still, in effect, a power to choose between the life beneficiary and the ultimate remaindermen and is thus within the *Hallock* rule. It was not until decedent's death that the remaindermen were guaranteed the eventual right to obtain this portion of the corpus.

Certainly there is nothing in the *Costin* decision to suggest that the *Costin* power represents the minimum latitude which the power must confer in order to be a "power of disposition." Also in *Estate of Milton J. Budlong*, 7 T.C. 756 (1946), affirmed on this issue sub nom. *Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142 (C.A. 1, 1947), in dealing with a power to designate who shall enjoy under section 811(c) (now section 811(c)(1)(B))[7] we held the grantor taxable where his power was to choose between beneficiaries and remaindermen. The First Circuit agreed, refusing to draw a distinction between "broad" and "narrow" powers.

Accordingly, we hold that decedent could, at will, remove any

---

[5] Even if we were to consider that decedent's power under paragraph Sixteenth was limited to invasions for his wife, the result would be the same, for the value of this right on Nov. 7, 1952, was greater than 5 per cent of corpus.

[6] See footnote 3, *supra*.

[7] See footnote 3, *supra*

individual cotrustee and appoint a party dominated by him and thereby exercise the powers under paragraph Sixteenth.

*Issue 2.   Amount Includible under Section 811(c)(2).*

From the foregoing analysis it becomes clear that decedent had a reversionary interest worth more than 5 per cent of the value of the corpus on the date of his death. Respondent argues that section 811(c)(2) read in conjunction with section 811(c)(1)(C) thus requires inclusion of the entire trust corpus in decedent's gross estate as a transfer intended to take effect in possession or enjoyment at or after death.

A literal reading of the statute might indicate this result. There are many cases which hold that the entire amount over which decedent had control at the moment of his death is includible. *Fidelity Co. v. Rothensies, supra.* It cannot be doubted that such a rule is in line with the principle that section 811(c)(1)(C) reaches those interests, the effective enjoyment of which may be changed up to the moment of decedent's death. *Helvering v. Hallock, supra.* Nor does section 811(c)(2) change this result once it is ascertained that the value of the reversion is large enough.

We have also followed this view in cases where at the moment of his death there was a possibility that the *whole corpus* might return to decedent. *Estate of Lelia E. Coulter*, 7 T.C. 1280; *Estate of John J. Toeller*, 6 T.C. 832, affd. 165 F. 2d 665 (C.A. 7, 1948). See also *Blunt v. Kelly*, 131 F. 2d 632 (C.A. 3). But all of these cases dealt with a possibility that the *entire corpus* would return to decedent.

Here we have a situation, insofar as decedent's power of invasion is concerned, where only an ascertainable portion is subject to decedent's control. Thus, we have a case directly within the rule of *Bankers Trust Co. v. Higgins*, 158 F. 2d 957 (C.A. 2, 1947), where there was a limited power of invasion for decedent's benefit and only the amount which it was reasonable to expect could be so reached was held includible. In line with the *Bankers Trust Co.* opinion, we feel it rather absurd to say that until decedent's death it was uncertain whether *any* of the corpus would pass to the beneficiaries.   Also cf. *Estate of Lena R. Arents*, 34 T.C. 274, wherein we excluded that portion of corpus in which transferor retained no rights of possession or enjoyment.

Surely, there is nothing in the advent of section 811(c)(2) to change the result of the *Bankers Trust Co.* case for, as pointed out above, that section was merely a relief measure to exclude in toto certain remote (5 per centum or less) possibilities of reversion of the entire corpus. We think it would greatly overextend the *Hallock*

rationale to hold that because decedent's interest in a *part* of the corpus reached congressionally specified proportions that thereby the whole corpus became includible. It must be remembered that section 811(c)(2) is but a qualification upon section 811(c)(1)(C) which includes property to the extent of decedent's interest therein.

Accordingly, we hold on this issue that only $31,280 of the trust corpus is includible, and thus it is unnecessary for us to decide respondent's alternative contention that this same portion of the corpus is includible as a revocable transfer under section 811(d)(2).

### Issue 3. Adding Rights and Powers.

As an alternative to his principal contention that decedent's reserved powers and rights under paragraphs Thirteenth and Sixteenth of the trust, in and of themselves, constituted the requisite reversionary interest for includibility of entire corpus, respondent argues that the entire corpus is nevertheless includible under section 811(c)(2) because of the "cumulative value of [the] several rights and powers reserved by the decedent under paragraphs FIRST and SIXTEENTH of the trust agreement."

Under paragraph First decedent had retained a reversionary interest in all of part (A) corpus if he survived Ethel and Louise, and in all of part (B) corpus if he survived Ethel and Helen. He also reserved a secondary life estate in income, during the continuation of each part, after the death of Ethel.

Respondent would have us regard each of these elements as "strings" attached to corpus and somehow add them (in spite of basic differences) in order to determine that the requisite 5 per centum of section 811(c)(2) had been exceeded.

We consider first the possible reversions of corpus. Respondent concedes that neither exceeds the 5 per centum requirement of section 811(c)(2), but urges that these reversions and decedent's powers under paragraph Sixteenth were both "interests" and that when added together they exceed the 5 per cent limitation. He cites no cases to support such action, and we have found none.

We feel that there is no relationship between a power of invasion which is limited in amount so that it extends to only a portion of corpus, and a remote reversion extending to the entire corpus, especially where, as is true here, they could never become operative together, for realization of the reversion would immediately extinguish decedent's powers under paragraph Sixteenth; also, the prior exercise of paragraph Sixteenth powers would reduce the size of the reversion. The two elements are not alike, and they cannot be added or combined.

Considering now the secondary life estate, respondent has conceded that this, standing alone, is not within section 811(c)(2). He speaks of it as one of decedent's "strings" to the trust property, but neither cites cases nor presents arguments (beyond bare statement of the proposition) in support of adding the value of this element. We observe at the outset that no normal reading of the pertinent language of section 811(c)(2) will support respondent's proposition. That language is:

An interest * * * of which the decedent made a transfer * * * shall not be included in his gross estate * * * unless the decedent has retained a reversionary interest in the property * * * and the value of such reversionary interest * * * exceeds 5 per centum of the value of such property. * * * the term "reversionary interest" includes * * *, *but such term does not include a possibility that the income alone from such property may return to him* * * * [Emphasis supplied.];

and our view that this section does not contemplate any interest in income is strengthened by the fact that such interests are dealt with specifically by section 811(c)(1)(B),[8] which last mentioned section is not relied upon by respondent in this case. Section 811(c)(2) is but a modification of section 811(c)(1)(C) and subsections 811(c)(1)(B) and (C) are separated by the disjunctive "or."

We resolve this issue for petitioner.

### *Issue 4. The Power of Termination.*

Respondent admits that this power, under paragraph Fourteenth of the trust, was not vested in decedent and therefore had no determinable value to him, but argues that it should not be overlooked in considering the various ways by which trust corpus might revert to the decedent.

Respondent argues that none of the there named individuals who might have terminated the trust "had any adverse interest therein" and would "doubtless have carried out the decedent's wishes." Respondent's statement in this regard is incorrect, for each of the three was to receive $500 out of the corpus of both part (A) and part (B) on termination of that part, but only if said termination occurred after settlor's death.

Respondent cites no authority for his position on this issue and we have found none; indeed, this aspect of the case seems to be directly covered by *Commissioner* v. *Irving Trust Co., supra.* There a "friendly" bank had in fact paid corpus over to the settlor upon his request, the *bank* having discretion to invade corpus for the settlor's benefit. In holding the corpus nonincludible in the

---

[8] See footnote 3, *supra.*

settlor's gross estate the court stressed the complete discretion in one other than the grantor and the absence of any legal means for compelling the bank to exercise such discretion.

Here it should be noted that the power of termination was given to the brother, Edward, *qua* brother, not as *trustee*. This is the only sensible reading of paragraph Fourteenth. Thus this power cannot be read in conjunction with paragraph Thirteenth of the trust (settlor's power to remove trustees) and *Estate of Paul Loughridge, supra,* is inapplicable. This power of termination is thus clearly distinguishable from the power (paragraph Sixteenth) of invasion in the individual trustees, and we conclude that it cannot be considered for any purpose.

The parties agree that petitioner has the right to deduct administration costs and counsel fees incurred in this proceeding.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.,* dissents.